BERKSHIRE HILLS PAPER CO. v. BYRON WESTON CO.

(Circuit Court of Appeals, First Circuit. February 7, 1917.)

No. 1247.

PATENTS ⬦⬦⬦328—PROCESS OF GROOVING PAPER NOT INFRINGED.

The Ramage & Shaw patent, No. 958,174, for paper and process of grooving same, which covers a method of making hinged ledger leaves, by grooving the paper after the same is dry, and before it is sized and calendered, *held* not infringed by a process which operates upon the wet pulp.

Appeal from the District Court of the United States for the District of Massachusetts; Dodge, Judge.

Suit in equity by the Berkshire Hills Paper Company against the Byron Weston Company. Decree for defendant, and complainant appeals. Affirmed.

Fred R. Shaw, of Adams, Mass., Edward S. Duvall, Jr., of Washington, D. C., and Henry L. Harrington, of Adams, Mass., for appellant.

W. K. Richardson, of Boston, Mass. (C. L. Sturtevant, of Washington, D. C., on the brief), for appellee.

Before BINGHAM, Circuit Judge, and ALDRICH and BROWN, District Judges.

BINGHAM, Circuit Judge. The plaintiff, the Berkshire Hills Paper Company, is the owner of the United States letters patent No. 958,174, issued May 17, 1910, to Ramage & Shaw, for "paper and process of grooving same," and complains that the defendant, the Byron Weston Company, has infringed claims 4, 5, and 9 of the patent in its manufacture of hinged ledger leaves. Claim 5 is the broad claim of the patent, and is the only one to which special reference need be made. It reads as follows:

"The herein described method of making hinged ledger leaves, which consists in forming a paper sheet from pulp, in producing a relatively thin section therein to form the hinge, then sizing the thinned sheet, and finally calendering."

The specification states that "the invention consists essentially in the process of forming grooves or flexible portions in the web or sheet of paper while the same is being made and before it has been sized and calendered, so that such flexible portions will possess the same durability as the rest of the sheet," that "the grooving operation is performed during the manufacture of the paper after the same is dry, and preferably in web form," and that "the manner in which the paper is grooved" is as follows:

"The web of paper as it nears the 'drier' end of the paper-making machine, commonly known as the 'Fourdrinier' type, and after it has passed around the last drier roll, is passed over an adjustable platen over which cutter wheels are rotated at a high rate of speed, in a direction opposite to the travel of the web. The cutter wheels and platen are both adjustable to cut any number or depth of grooves in the paper, and the paper, after it passes under the cutters, goes to the sizing boxes, and then it is calendered in the proper man-

⬦⬦⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ner and cut into the proper sized sheets. Thus it will be seen that the dry and unfinished paper is grooved, afterward animal sized, then calendered and finished."

The defendant makes hinged ledger leaves under a reissue patent, No. 13,730, granted to Phillip Weston, May 12, 1914. In defining the defendant's method of making hinged ledger leaves, the court below said:

"To produce its relatively thin hinged section in the completed sheet, the defendant operates at what is called the 'wet' end of the Fourdrinier machine, upon the wet pulp web, spread upon the wire apron, and at a point near the discharge end of said apron. The pulp has at that stage lost some of the water contained in it when first spread upon the wire apron, and during its travel thereon its fibres have become so distributed and interwoven that they are ready to become felted together when compressed and dried. But the process of drying it can hardly be said to have begun, while the process of pressing it has not begun at all. Both processes are indispensable to the production of a paper sheet, and they require for their completion more machinery and more space in the machine than has been employed in getting the pulp web to the point at which the defendant's relatively thinned section is formed in it.

"It is there formed by removing some of the wet pulp constituting the web along defined lines. Such removal is effected by suction from the upper side of the web, during or just before its passage over suction boxes operating upon its under side, which begin the process of extracting the water contained in it. Thus thinned along the defined lines desired in its upper surface, the web passes over more suction boxes; then underneath the dandy roll, which forms the water-mark in it; then between two couch rolls, which compress it to a state in which it can leave the wire apron; then to the successive felt aprons and press rolls, which further compact it and squeeze out its contained water, delivering it, in the stage at which it is usually first called paper, to the drier rolls, and from them, its dampness removed, to the calendar rolls, which finish its surface."

In its opinion the court below found and ruled: (1) That claims 4 and 9 were not infringed by the defendant's process, "even if the defendant could properly be said to form its relatively thin sections by operating upon a paper sheet," as, by these claims, the patentees have expressly limited themselves to "grinding or cutting a paper sheet as their means for forming relatively thin sections"; that "the wet pulp upon which the defendant operates could not be ground or cut, any more than the paper sheet upon which the patentees operate could be thinned by suction"; and (2) that claim 5 is not infringed by defendant's process (a) because that claim, by its terms and by the proceedings in the Patent Office, is limited to a removal of the fiber after a paper sheet has been formed from the pulp, and that a paper sheet has not been formed at the point where the pulp web is thinned in the defendant's process; and (b) because the prior art forbids a construction of the claim "which would cover the production of a paper sheet having thin hinged sections in it obtained by any removal of a part of the stock during or simultaneously with the course of manufacture, at *any stage* prior to sizing."

Having carefully considered the proofs and arguments of counsel with reference to these questions, we think the decree of the court below should be affirmed, and for the reasons above stated.

The decree of the District Court is affirmed, with costs to the appellee.